IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **XIROS, LTD.,**<br>　　　　*Plaintiff*<br><br>-vs-<br><br>**DEPUY SYNTHES SALES, INC.,**<br>　　　　*Defendant* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § 　　W-21-CV-00681-ADA |

### ORDER ON MOTION TO DISMISS

Came on for consideration Defendant DePuy Synthes Sales, Inc.'s Motion to Dismiss (the "Motion"). ECF No. 26. Plaintiff Xiros, Ltd. filed its opposition (ECF No. 35), and DePuy Synthes Sales, Inc. its reply (ECF No. 36). After careful consideration of the briefs and the applicable law, the Court **GRANTS** Defendant's Motion.

### I.　　BACKGROUND

On June 28, 2021, Xiros, Ltd. ("Xiros") filed its complaint against numerous defendants. *See* ECF No. 1. On July 27, 2021, Xiros amended its complaint against each of the defendants (ECF No. 18, the "FAC"), prompting DePuy Synthes Sales, Inc.'s ("DSS") Motion. Xiros alleges infringement of U.S. Patent Nos. 9,125,674 (the "'674 Patent"), 9,265,511 (the "'511 Patent"), 10,835,265 (the "'265 Patent"), and 10,835,266 (the "'266 Patent") (the "Asserted Patents").

DSS is a subsidiary of Johnson & Johnson ("J&J"), and DSS is identified on J&J's website as "The Orthopaedics Company of Johnson & Johnson." ECF No. 18 ¶¶ 10, 16, 31. "DePuy has described the DePuy Synthes family of companies as 'a group of functionally-integrated companies with shared management and administrative functions.'" ECF No. 18 ¶ 17

(quoting *DePuy Synthes Sales, Inc. v. Orthofix Int'l N.V.*, C.A. No. 4:19-cv-00122 (E.D. Tex.), ECF No. 1 ¶ 7). Since amending the complaint, Xiros has voluntarily dismissed all other defendants, such that only DSS remains. *See* ECF No. 40 ("Xiros will proceed on its claims against DePuy Synthes Sales, Inc., the defendant entity that admittedly has committed acts that are accused of infringement. Xiros reserves the right to re-add the named parties or to add new parties after discovery commences.").

Xiros alleges DSS copied patented inventions and "launched a competing product line: TruMatch Personalized Solutions Resection Guides and TruMatch Solutions Pin Guides." ECF No. 18 ¶ 5. The patented technology involves a surgical tool that improves the "accuracy and safety of knee replacement surgeries." ECF No. 18 ¶ 2. The invention "allow[s] surgeons to make accurate cuts to the tibia and femur during knee replacement surgery that would be patient-specific and therefore account for intra-patient differences." ECF No. 18 ¶ 2. The innovation also "use[s] materials and a structure that [does] not expose the patient to debris in the surgical site." ECF No. 18 ¶ 2.

DSS argues Xiros has failed to plead facts sufficient to state a claim for indirect or willful infringement. ECF No. 26 at 1. Specifically, DSS argues Xiros does not adequately allege DSS, rather than its affiliates, had knowledge of the Asserted Patents. ECF No. 26 at 2–3. DSS further asserts Xiros has inadequately alleged it was willfully blind to any of the Asserted Patents. DSS thus moves to dismiss Xiros's claims for indirect and willful infringement pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 26 at 1, 4.

## II.     LEGAL STANDARD

### A. Pleading Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is "a purely procedural question not pertaining to patent law," and so the law of the Fifth Circuit controls. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007). When considering such motions, this Court "accepts all well-pleaded facts as true, views them in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor." *Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 361 (5th Cir. 2021).

Rule 12(b)(6) requires that a complaint contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this factual plausibility standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In resolving a motion to dismiss for failure to state a claim, the question is "not whether [the plaintiff] will ultimately prevail, . . . but whether [the] complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). Thus, when addressing a motion to dismiss, the Court

"accepts all well-pleaded facts as true, views them in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor." *Johnson v. BOKF*, 15 F.4th at 361.

### B. Willful Infringement

Under Section 284 of the Patent Act, a court may increase damages for patent infringement "up to three times the amount found or assessed." 35 U.S.C. § 284. A party seeking such "enhanced damages" must show that an infringer's conduct has been "willful," or "wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016). Enhanced damages should "generally be reserved for egregious cases typified by willful misconduct." *Id.* at 106.

To state a claim for relief for willful patent infringement, a plaintiff must allege facts plausibly showing that the accused infringer: "(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019) (quoting *Välinge Innovation AB v. Halstead New England Corp.*, No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018)).

### C. Indirect Infringement

Section 271(b) of the Patent Act provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To succeed on such a claim, the patentee must show that the accused infringer (1) knowingly induced direct infringement and (2) possessed "specific intent" to induce that infringement. *See MEMC Electr. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). Willful blindness can satisfy the knowledge requirement, *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344,

1347 (Fed. Cir. 2016), and circumstantial evidence may suffice to prove specific intent, *MEMC*, 420 F.3d at 1378.

To state a claim for relief for induced patent infringement, "a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376–77 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012)). "[T]here can be no inducement or contributory infringement without an underlying act of direct infringement." *Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*, No. 1:14-cv-00134-LY, 2015 WL 3513151, at *3 (W.D. Tex. Mar. 24, 2015). "To state a claim for indirect infringement . . . a plaintiff need not identify a specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." *In re Bill of Lading*, 681 F.3d at 1336.

### III.   ANALYSIS

**A. Knowledge of the Asserted Patents Cannot Be Imputed to DSS from Its Affiliates.**

Xiros argues knowledge of at least some of the Asserted Patents should be imputed to DSS from its affiliates. ECF No. 35 at 6. However, only one explicit allegation of DSS's knowledge can be found in the FAC, and it is founded upon the alleged knowledge of DSS's parent company, J&J. In making this allegation, Xiros contends DSS's awareness of the Asserted Patents is evident from J&J's citation of an article on its website and in multiple press releases. *See* ECF No. 18 ¶ 52. The article was published in 2008 by the three named inventors of the Asserted Patents and it describes the technology of the patents. *Id.* ¶ 51. But the FAC does not

5

allege DSS ever saw the article, and the article makes no reference to the Asserted Patents. ECF No. 26 at 2–3. This alone inadequately pleads DSS's knowledge.

The only remaining assertions of knowledge are directed to DSS's affiliates. Xiros contends in its response that:

> The extensive history of negotiations and discussions between [one of the inventors, the university where the Asserted Patents were developed], Xiros, DePuy, and J&J, and the close relationship between DSS and the other J&J Defendants in commercializing the TruMatch products are sufficient to show that DSS plausibly had the required knowledge of the Asserted Patents necessary to support Xiros' claims for induced, contributory and willful infringement.

ECF No. 35 at 8. Thus, Xiros's claims of DSS's knowledge are dependent on whether it can be imputed to DSS from J&J or its other affiliates. After a careful review, the FAC does not provide a strong enough link between DSS and its affiliates to justify imputing knowledge to DSS.

Here, no clear link is established between the affiliate companies and DSS. The FAC makes the following allegations. The accused products are TruMatch Personalized Solutions Resection Guides and TruMatch Solutions Pin Guides." ECF No. 18 ¶ 5. DePuy Synthes, Inc. ("DePuy") is "the last listed owner of the TruMatch trademark." ECF No. 18 ¶ 10. DePuy is a subsidiary of J&J and is identified on J&J's website as "The Orthopaedics Company of Johnson & Johnson." ECF No. 18 ¶ 10. DSS is another subsidiary of J&J, and it shares its principal place of business with DePuy. ECF No. 18 ¶ 16, 31. "DePuy has described the DePuy Synthes family of companies as 'a group of functionally-integrated companies with shared management and administrative functions,'" and DePuy has 'a direct and substantial interest with respect to the customer relationships, goodwill, confidential information, and specialized training of the DePuy's franchise.'" ECF No. 18 ¶ 17.

Xiros offers little more than "the bare facts of the parent/subsidiary relationship." *ZitoVault, LLC v. Int'l Bus. Machs. Corp.*, No. 3:16-CV-0962-M, 2018 WL 2971131, at \*3 (N.D. Tex. Mar. 29, 2018) ("Knowledge of a patent by a parent corporation is not necessarily imputed to its subsidiary."). Its strongest allegation is that the affiliates have "shared management and administrative functions," but this insufficiently establishes that knowledge should be imputed from one company to another because the FAC does not identify a shared manager or administrator with knowledge of the Asserted Patents. ECF No. 18 ¶ 17; *cf. ACQIS LLC v. Lenovo Grp. Ltd.*, No. 6:20-CV-00967-ADA, 2022 WL 2705269, at \*6–7 (W.D. Tex. July 12, 2022) (finding that a notice letter to a CEO could be imputed to subsidiaries as all the companies operated as a multi-national conglomerate developed to obscure corporate distinctions). Thus, while Plaintiff identifies a relationship between DSS and its affiliates, it inadequately alleges a plausible claim that knowledge should be imputed to DSS.

Xiros's citation to *Frac Shack Inc. v. AFD Petroleum (Texas) Inc.* is unavailing. Xiros references this case as an example of an instance in which this Court has found a plaintiff adequately pleaded knowledge should be imputed from one defendant to "all the other [d]efendants through the common ownership and governance of each company." *Frac Shack Inc. v. AFD Petroleum (Tex.) Inc.*, No. 7:19-CV-00026-DC, 2019 WL 3818049, at \*4 (W.D. Tex. June 13, 2019). But DSS identifies the many distinctions between this case and *Frac Shack*. *See* ECF No. 36 at 2–3.

In *Frac Shack*, the complaint alleged the defending entities were governed by one man, Mr. Parker McLean. *Frac Shack*, 2019 WL 3975282, at \*6–7 (W.D. Tex. Apr. 22, 2019). Mr. McLean and one of his defending entities had been engaged in five years of prior litigation involving a patent related to one of the asserted patents. *Frac Shack Inc.*, 2019 WL 3818049, at

\*4. This entity also submitted a provisional patent application on an allegedly infringing design, allowing the Court to infer the defendant "had patent counsel engaged in activities related to the . . . [p]laintiff's patents." *Id.* After the Patent Office publicly notified the plaintiff its asserted patent would issue, the defendant's counsel reported that an allegedly infringing design was decommissioned in advance of the issuance. *Id.* at \*5. From this, the Court reasonably inferred that the defendants "were monitoring the progress of the application for the [asserted patent], saw that the Patent Office approved the claims, and decommissioned the [allegedly infringing design] in anticipation of the [asserted patent's] issuance." *Id.* at \*5. These allegations permit the reasonable inference of Mr. McLean's knowledge. Imputation from Mr. McLean to his entities was justified by his control of all of them. There is no similar showing here.

### B. Xiros Insufficiently Pleads DSS Was Willfully Blind to the Asserted Patents.

"A showing of willful blindness requires that '(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.'" *USC IP P'ship, L.P.*, 2021 WL 3134260, at \*1 (quoting *Glob.-Tech Appliances, Inc.*, 563 U.S. at 763). Xiros does not sufficiently plead either requirement.

Xiros makes the following allegations. In January 2007, under a confidentiality agreement, an inventor of the patented technology disclosed the details of the inventions to DePuy. ECF No. 18 ¶ 4, 47. In March 2007, the University of Leeds filed a British patent application and "sent a copy of the application and disclosures to Alan Ashby, who was the Vice President of Global Concept Development for DePuy International." *Id.* ¶ 48. Later that year, Leeds tried to negotiate with DePuy to reach a licensing agreement for the technology disclosed in the British patent application, but DePuy refused to reach an agreement, claiming there were "significant barriers" to obtaining the patent. *Id.* ¶ 49. "Instead of properly licensing the

8

technology, DePuy allegedly used the knowledge obtained under protection of the confidentiality agreement to create the competing TruMatch line of products." *Id.* ¶ 50.

In June 2014, negotiations resumed "until Xiros sent an email on September 4, 2014, to Mr. Manich and Nadine McFarren, the Director of Research and Development of TruMatch for DePuy," and "received no timely response." *Id.* ¶ 54. Communications continued in 2015, including with Bruce Rosengard, the Chief Technical Officer of the J&J Surgical business. *Id.* Finally, in 2016, Xiros renewed licensing negotiations with Joseph Kuranda, the Senior Director of Business Development for DePuy. *Id.* ¶ 57. "In these communications, Xiros disclosed various patents and patent applications, and specifically cited three granted U.S. Patents," including two of the Asserted Patents, and "Mr. Kuranda acknowledged receipt of these communications and acknowledge that DePuy was aware of the Xiros patents and claims." ECF No. 18 ¶ 57.

While the final allegation is the strongest, Xiros inadequately pleads DSS's willful blindness. Under the analysis from the prior section, the knowledge from Mr. Kuranda and the other named officials cannot be imputed to DSS because Xiros does not allege a clear link between these officials and DSS, and imputation from these officials is the only material in the FAC from which the Court can infer DSS's subjective belief in the high probability of a relevant fact. *See USC IP P'ship, L.P.*, 2021 WL 3134260, at *1. Moreover, as DSS notes in its Reply, "Plaintiff does not plead facts suggesting that any entity took deliberate actions to avoid learning of the Asserted Patents." *See id.*; ECF No. 36 at 5.

Xiros cites to *Biosonix, LLC v. Hydrowave, LLC*, but the court made no finding on willful blindness in that case. *See generally Biosonix, LLC v. Hydrowave, LLC*, No. 4:16-CV-139, 2016 WL 9229848, at *4 (E.D. Tex. Aug. 10, 2016). Further, the cases cited by DSS show that more is

9

required to state a claim for willful blindness. *See USC IP P'ship, L.P.*, 2021 WL 3134260, at *1–2 (granting motion to dismiss pre-suit indirect and willful infringement claims where the plaintiff alleged the defendant had "a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus ha[d] been willfully blind of USC IP's patent rights"); *VLSI Tech., LLC v. Intel Corp.*, No. 6:19-CV-000254-ADA, 2019 WL 11025759, at *1 (W.D. Tex. Aug. 6, 2019) ("The Court finds that Intel's policy that forbids its employees from reading patents held by outside companies or individuals is insufficient to meet the test of willful blindness."). Ultimately, Plaintiff's allegations seem to be directed towards DePuy and J&J, with the hopes that the allegations against DSS are incidentally sufficient. They are not.

## IV.     CONCLUSION

For the foregoing reasons, DSS's Motion to Dismiss (ECF No. 26) is **GRANTED**.

**IT IS THEREFORE ORDERED** that Plaintiff's claims for indirect and willful infringement are **DISMISSED.**

**IT IS FURTHER ORDERED** that Plaintiff be **GRANTED LEAVE** to re-plead its claims for indirect and willful infringement within fourteen days. Alternatively, Plaintiff may also file a notice to take discovery of these claims and later seek leave to replead these claims with the benefit of additional discovery.

SIGNED this 22nd day of August, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE