# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

XIROS, LTD.,

                Plaintiff

      v.

DEPUY SYNTHES SALES, INC.,

              Defendant.

Civil Action No. 1:22-cv-11362-AK

**PATENT CASE**

**JURY TRIAL DEMANDED**

## XIROS, LTD.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STRIKE DSS'S AFFIRMATIVE DEFENSE OF INEQUITABLE CONDUCT

## TABLE OF CONTENTS

**Page**

I.  FACTUAL BACKGROUND ........................................................................... 1

II.  ARGUMENT ............................................................................................... 3

    A.  LEGAL STANDARDS ........................................................................ 3

    B.  DSS'S THIRD AFFIRMATIVE DEFENSE FAILS TO PLEAD INEQUITABLE CONDUCT WITH THE REQUIRED PARTICULARITY ............................................................................... 5

        1.  DSS FAILS TO PLEAD ANY FACTS RELATED TO THE MAJORITY OF THE "APPLICANTS" THAT IT ALLEGES ENGAGED IN INEQUITABLE CONDUCT ........................................... 5

        2.  DSS FAILS TO PLEAD FACTS SHOWING THAT  THE '674 PATENT WOULD NOT HAVE ISSUED HAD THE PTO BEEN AWARE OF THE ALLEGEDLY WITHHELD REFERENCES ............ 7

        3.  DSS'S VAGUE AND CONCLUSORY ALLEGATIONS ARE INSUFFICIENT TO PLEAD SPECIFIC INTENT TO DECEIVE THE PTO DURING THE PROSECUTION OF THE '674 PATENT ........................................................................................ 9

        4.  DSS'S ALLEGATIONS OF INEQUITABLE CONDUCT FOR THE '511 PATENT SHOULD ALSO BE STRICKEN ......................... 13

        5.  DSS'S INEQUITABLE CONDUCT DEFENSES FOR THE '511, '265 AND '266 SHOULD BE STRICKEN AS DSS HAS FAILED TO ALLEGE AN IMMEDIATE AND NECESSARY RELATION BETWEEN INEQUITABLE CONDUCT AND THE ENFORCEMENT OF THESE PATENTS ........................................... 13

III.  CONCLUSION ........................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Analog Devices, Inc. v. Xilinx Inc.*,
    No. 19-cv-2225-RGA, 2021 WL 466859 (D. Del. Feb. 9, 2021) ..................................7, 10, 11

*Corning Inc. v. Wilson Wolf Manufacturing Corp.*,
    569 F.Supp.3d 920 (D. Minn. 2021) ........................................................................................9

*Courtesy Products L.L.C. v. Hamilton Beach Brands, Inc.*,
    No. 13-2012-SLR-SRF, 2015 WL 6159113 (D. Del. Oct. 20, 2015) .......................................7

*Easton Tech. Prod., Inc. v. FeraDyne Outdoors, LLC*,
    No. CV 18-1222-RGA, 2019 WL 1513463 (D. Del. Apr. 8, 2019) .......................................10

*eSpeed, Inc. v. Brokertec USA, L.L.C.*,
    417 F.Supp.2d 580 (D. Del. 2006), *aff'd*, 480 F.3d 1129 (Fed. Cir. 2007) ...........................14

*Exergen Corp. v. Wal–Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009)...................................................................................*passim*

*Finjan, Inc. v. Juniper Network, Inc.*,
    No. C 17-05659 WHA, 2018 WL 4181905 (N.D. Cal. Aug. 31, 2018) ..................................7

*Glob. Tech Led, LLC v. Hilumz Int'l Corp.*,
    No. 2:15-CV-553-FTM-29CM, 2017 WL 588669 (M.D. Fla. Feb. 14, 2017) ......................15

*Invista N. Am. S.a.r.l. v. M&G USA Corp.*,
    No. 11-1007-SLR-CJB, 2013 WL 12304544 ........................................................................10

*Iovate Health Sci. Inc., v. Bio-Engineered Supplements & Nutrition, Inc.*,
    No. 9:07-CV-46, 2008 WL 2359961 (E.D. Tex. June 5, 2008)...............................................8

*Medline Indus., Inc. v. C.R. Bard, Inc.*,
    No. 16-CV-3529, 2016 WL 5871501 (N.D. Ill. Oct. 7, 2016) ...............................................11

*Ocado Innovation Ltd. v. AutoStore AS*,
    No. 1:21-cv-0004-JL, 2021 WL 6197076 (D.N.H. Dec. 30, 2021).......................................12

*Petedge, Inc. v. Fortress Secure Sols., LLC*,
    No. 15-cv-11988, 2016 WL 407065 (D. Mass. Feb. 2, 2016) ..............................................1, 3

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    No. CIV. 08-309-JJF-LPS, 2009 WL 4928024 (D. Del. Dec. 18, 2009).........................14, 15

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
No. 12-441-RGA 2014 WL 2622240 (D. Del. June 11, 2014) (discussing U.S.
Patent No. 6,193,669, from outside the pleadings, on a motion to strike and
dismiss) ........................................................................................................................8

*Therasense Inc., v. Becton, Dickinson and Co.*,
649 F.3d 1276 (Fed. Cir. 2011) ........................................................................ *passim*

*UFCW v. Novartis Pharms. Corp.*,
No. 15-cv-12732, 2017 WL 2837002 (D. Mass June 30, 2017) ................................8

*Zvelo, Inc. v. SonicWall, Inc.*,
No. 06–cv–00445–PAB–KLM, 2013 WL 5443858 (D. Colo. Sept. 30, 2013) ....................11

**Other Authorities**

Fed. R. Civ. P. 12(f) ............................................................................................................3

Plaintiff Xiros, Ltd. requests that the Court strike Defendant DePuy Synthes Sales, Inc.'s ("DSS") Third Affirmative Defense of inequitable conduct and unclean hands under Federal Rules of Civil Procedure 12(f) and 9(b).

DSS's allegations in its Third Affirmative Defense of inequitable conduct and unclean hands fail to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  It is well settled law that the defense of inequitable conduct must be alleged with particularity, consistent with the requirements of Rule 9(b).  *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009).  Even at the pleading stage, a defendant must allege detailed *facts* sufficient to demonstrate each element of the inequitable conduct defense, which, in the case of a reference that was allegedly withheld from the patent office, at least the following: (1) that the allegedly withheld reference was but-for material and (2) the requisite state of mind, meaning that specific individuals involved with the prosecution of the patents had knowledge of the reference's materiality and made a *deliberate decision* to withhold the reference with *specific intent* to deceive the patent office. *Id.* at 1330.  As other Courts in this district have put it, DSS must allege the "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the [patent office]."  *Petedge, Inc. v. Fortress Secure Sols., LLC*, No. 15-cv-11988, 2016 WL 407065, at *3 (D. Mass. Feb. 2, 2016) (quoting *Exergen*, 575 F.3d at 1326–27).  DSS's allegations fail to do so and its defense of inequitable conduct should be stricken.

## I.     FACTUAL BACKGROUND

Xiros filed its complaint on June 28, 2021, alleging that DSS infringes U.S. Patent Nos. 9,125,674 (the "'674 Patent"), 9,265,511 (the "'511 Patent"), 10,835,265 (the "'265

Patent"), and 10,835,266 (the "'266 Patent") (collectively, the "Asserted Patents")[1].  The named inventors of the Asserted Patents are Derrick White, Bahaa Seedhom, and Kenneth Chelule. Xiros filed its first amended complaint on July 27, 2021.  Dkt. 18.  The Western District of Texas transferred the case to this Court on August 22, 2022.  Dkt. 73.  On October 12, 2022, DSS filed its answer.  Dkt. 94.

For its Third Affirmative Defense, DSS alleges that each of the Asserted Patents is unenforceable due to inequitable conduct and unclean hands committed by the "Applicants," which DSS defines broadly as "representatives of Xiros, Ltd., including the named inventors and their prosecuting attorneys."  Dkt. 94 at ¶118.  As to the '674 Patent, DSS alleges that the Applicants committed inequitable conduct based on an alleged non-disclosure of the following references or office actions: U.S. Publication No. 2007/0226986 ("Park"), U.S. Publication No. 2005/0228393 ("Williams"), a July 6, 2015 Office Action from the prosecution of the '511 Patent discussing Park and Williams ("Office Action"), *Design of Drill Guides For the Thoracic and Cervical Regions of the Spine* ("Cuppone") and *Personalised Image-Based* Templates *for Intra-Operative Guidance* ("Berry").  *Id.* at ¶¶131-132,  138-141.

For the '511 Patent, DSS alleges that the Applicants committed inequitable conduct theory based on an alleged non-disclosure of the Cuppone and Berry references.  *Id.* at ¶¶144-146.  DSS further alleges that the '511 Patent is unenforceable under the doctrine of infectious unenforceability, essentially asserting that this patent should be unenforceable because of the alleged inequitable conduct during the prosecution of the '674 Patent.  *Id.* at ¶146.

---

[1] Defendants DePuy Synthes, Inc., Johnson & Johnson, Depuy Orthopaedics, Inc., Medical Device Business Services, Inc., Waco Orthopedics, Ascension Medical Group Providence Orthopedic and Sports Medicine, Jacob Battle, M.D. and Chad S. Conner, M.D. have been dismissed without prejudice.  Dkt. 22, 40.

For the '266 and '265 Patents, DSS does not allege that any references were withheld during prosecution and instead alleges derivative unenforceability, namely that these patents should be unenforceable because of the alleged inequitable conduct during the prosecution of the '674 and '511 Patents.  *Id.* at ¶¶147, 150.

## II.    ARGUMENT

### A.    Legal Standards

With respect to affirmative defenses, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A district court evaluating the sufficiency of a pleading alleging inequitable conduct must apply the law of the United States Court of Appeals for the Federal Circuit, rather than the law of the regional circuit court.  *Exergen*, 575 F.3d 1312, 1326 (Fed. Cir. 2009).

Recently, "[t]he Federal Circuit has tightened the inequitable conduct pleading standard to ensure that the defense is sustained only in egregious circumstances and to discourage parties from using it as a mere litigation tactic in garden-variety cases."  *PetEdge*, 2016 WL 407065, at *3 (quoting *Exergen*, 575 F.3d at 1326–27).  The Federal Circuit recognized that allegations of inequitable conduct are the "'atomic bomb' of patent law" given the significant consequences of an inequitable-conduct finding.  *Therasense Inc., v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1289–90 (Fed. Cir. 2011).  Because of this, parties had developed an excessive enthusiasm for bringing such allegations as a litigation tactic, which became an "absolute plague" to "not only courts but also the entire patent system."  *Id.*

To address the overuse of inequitable conduct claims, the Federal Circuit established stringent pleading requirements, especially where inequitable conduct is based on alleged omissions.  The allegations in the pleading must establish that "a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2)

3

withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328–29.  In other words, the allegations must establish that the "specific individual" whose conduct was allegedly inequitable must have "*made a deliberate decision* to withhold" information "*known* [to that person to be] material." *Therasense*, 649 F.3d at 1290 (emphases in original; quotation marks omitted).  Information is only material "if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* at 1291 (establishing the "but-for materiality" standard).  The pleading must also identify what claims, and what limitations in those claims, the allegedly withheld reference are relevant to, and where in those references the material information is found. *Exergen,* 575 F.3d at 1329.  It must further identify *why* the withheld information is material and not cumulative (*i.e.*, why the non-disclosure of the reference was a but-for cause for allowance), and how an examiner would have used this information in assessing the patent claims. *Id.* at 1329-30; *Therasense*, 649 F.3d at 1291-92.

Alleged facts establishing only that "the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Therasense*, 649 F.3d at 1290.  Moreover, a party's ability to rely on "indirect and circumstantial" evidence or allegations that a misrepresentation or omission was deliberate is highly limited: to satisfy the intent requirement, "the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence"; in other words, the allegations or evidence must "*require* a finding of deceitful intent in light of all the circumstances." *Id.* (emphasis in original).  "Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* at 1290–91.  Relatedly, the "absence of a good faith explanation for failing to disclose" is not enough; the party alleging inequitable misconduct must make affirmative allegations of a deliberate attempt to deceive. *Id.* at 1291.

4

**B.      DSS's Third Affirmative Defense Fails to Plead Inequitable Conduct With the Required Particularity**

DSS Third Affirmative Defense of inequitable conduct should be stricken in its entirety. First, while DSS alleges that the "Applicants," including the three named inventors and Xiros' prosecuting attorneys, broadly committed inequitable conduct, it fails to plead any facts related to the majority of the these individuals.  Second, DSS failed to allege sufficient facts to show that any of the allegedly withheld references were material and not cumulative of the prior art already in front of the Examiners of the '511 or '674 patents.  Finally, DSS has failed to plead facts to support its allegation that any specific individual acted with the requisite specific intent to deceive the PTO.

**1.      DSS Fails to Plead Any Facts Related to the Majority of the "Applicants" that it Alleges Engaged in Inequitable Conduct**

Rather than clearly identify the specific individuals who made a deliberate decision to withhold a specific piece of material information with an intent to deceive the PTO, DSS's pleading adopts a scattershot approach, making largely non-specific allegations that a collection of individuals and Xiros' prosecuting attorneys collectively failed to disclose a range of purportedly relevant references.  Most of those allegations focus on what "the Applicants" did, and are hence effectively meaningless given that DSS must allege facts establishing that a specific person intended to deceive the PTO.  Because DSS failed to plead facts related to the conduct of the Applicants that would satisfy the pleading requirements for inequitable conduct, the allegations against the Applicants[2] should be stricken.

DSS's allegations must establish with particularity that each specific individual that has been accused of inequitable conduct made a deliberate decision to withhold knowingly material

---

[2] The allegations against the Applicants would include those at paragraphs 118, 119, 122, 126, 129, 130, 132, 135, 137,  138, 143, 144, 146, 147, and 150.

information with specific intent to deceive the PTO.  *Exergen*, 575 F.3d at 1328–29.  Most of

DSS's allegations fall woefully short of this as they are not about any particular individual but

instead concern the broad group of individuals that DSS defined as the Applicants, which

includes the three named inventors[3] and Xiros' prosecuting attorneys.  DK 94 at ¶118.  For

example:

- "[The Applicants] deliberately withheld information material to patentability, or which they were aware, with an intent to deceive the [PTO]…" (¶118)

- "On July 23, 2015, the Applicants responded to the rejections in the '825 Application…." (¶126)

- "During prosecution of the '674 Patent, the Applicants repeatedly withheld known, material information with intent to deceive the Examiner."  (¶129)

- "Applicants intentionally failed to disclose to Examiner Beccia (1) Examiner Woodhalls July 6, 2015 rejection…." (¶132)

- "The most reasonable inference is that this information was withheld by the Applicants with intent to deceive the PTO and obtain issuance of the '674 Patent." (¶135)

- "Throughout prosecution of the '674 Patent, Applicants withheld prior art references…"  (¶138)

These allegations do not establish what any particular inventor, or prosecuting attorney,

knew or did and instead make sweeping generalizations about the "Applicants."  Allegations

made at this level of generality are largely meaningless, and are certainly not appropriate in

pleading inequitable conduct.  For instance, in *Exergen*, the Federal Circuit rejected a pleading

that "refers generally to 'Exergen, its agents and/or attorneys,'" because it "fails to name the

specific individual" who undertook the alleged conduct or had the alleged knowledge.  575 F.3d

at 1329.  This Court has similarly rejected inequitable conduct allegations that focused on what a

---

[3] Indeed, the only references to inventors Kenneth Chelule and Derrick White are in the paragraph defining the term, Applicants.  Otherwise DSS makes no allegations concerning these individuals.

company as a whole did, but "failed to identify a specific individual."  *PetEdge*, 2017 WL

1702276, at *3.  The allegations here are even worse: they do not even focus only on a specific

company, but on a company, its representatives, three inventors, and the general category of

"prosecuting attorneys."  This Court should therefore disregard all allegations about what "the

Applicants" did or knew, as they are too vague to possibly establish that a specific individual

defrauded the PTO.

### 2.   DSS Fails to Plead Facts Showing that  the '674 Patent Would Not Have Issued Had the PTO Been Aware of the Allegedly Withheld References

DSS's allegations fail to demonstrate that but-for the alleged failure to disclose the Office

Action, Park, Williams, Cuppone, or Berry, the '674 Patent would not have issued.  Accordingly,

DSS's allegations are deficient and should be stricken.  *See Therasense*, 649 F.3d at 1291;

*Finjan, Inc. v. Juniper Network, Inc.*, No. C 17-05659 WHA, 2018 WL 4181905, at *5 (N.D.

Cal. Aug. 31, 2018) (striking inequitable conduct defense for failure to plead but-for materiality);

*Courtesy Products L.L.C. v. Hamilton Beach Brands, Inc.*, No. 13-2012-SLR-SRF, 2015 WL

6159113, at *6 (D. Del. Oct. 20, 2015), *report and recommendation adopted*, 2016 WL 354745,

at *1 (D. Del. Jan. 28, 2016) (same); *Lexington Luminance*, 972 F. Supp. 2d at 93 (dismissing

inequitable conduct allegations in part because "defendants summarily claim that Figure 6 was

not cumulative of cited prior art but fail to specify why or how").

In order to plead but-for materiality, Federal Circuit law requires DSS to allege the facts

"necessary to explain both 'why' the withheld information is material and not cumulative, and

'how' an examiner would have used this information in assessing the patentability of the

claims."  *Exergen,* 575 F.3d at 1329-30; *Analog Devices, Inc. v. Xilinx Inc.*, No. 19-cv-2225-

RGA, 2021 WL 466859, *3 (D. Del. Feb. 9, 2021) ("ADI's failure to address the contents of the

prior art before the PTO means that ADI has failed to plead materiality with the particularity required by Rule 9(b).").

For the Cuppone and Berry references, DSS fails to allege facts demonstrating that Cuppone and Berry are not cumulative of the prior art of record for the '674 Patent.  In fact, the specification of the '674 Patent contains an explicit disclosure and analysis of the subject matter of these allegedly withheld references in the form of a paper titled *Computer-assisted Total Knee Arthroplasty Using Patient-specific Templating* ("Hafez").  Dkt. 1, Ex. A, '674 Patent at 2:30-3:10.  Two of the inventors of the '674 Patent, Dr. Chelule and Dr. Seedhom, were authors on the Hafez paper.  DSS has alleged that the key disclosure in the Berry and Cuppone references is the use of "patient specific locating means with a plurality of locating members with bone-engaging surfaces."  Dkt. 94 at ¶¶138-139.  But Hafez, which is discussed in the specification and therefore known to the examiner when the '674 Patent was issued, makes reference to "patient-specific templates" with "locators [that] were patient specific."  Ex. 1[4] Hafez at p. 185-186.  Such a disclosure would be cumulative of Berry and Cuppone, which DSS alleges depict a "patient specific locating means with a plurality of locating members with bone-engaging surfaces."  Dkt. 94 at ¶¶138-139.  Moreover, the Hafez reference cites to Berry.  Ex. 1 at p. 189, FN1.  Because the '674 Patent specifically incorporates by reference that portion of Hafez (Dkt. 1, Ex. A, 674 Patent at 2:34-50), the citation to Berry is also incorporated by reference.[5]  *Iovate*

---

[4] Attached as Exhibit 1 to the Declaration of Michael C. Ting, filed concurrently.
[5] Courts may consider references outside the inequitable conduct pleading in determining whether an accused infringer has adequately alleged non-cumulativeness. See *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, No. 12-441-RGA 2014 WL 2622240, at *2 (D. Del. June 11, 2014) (discussing U.S. Patent No. 6,193,669, from outside the pleadings, on a motion to strike and dismiss). It is appropriate to do so here as well. *See*, e.g., *UFCW v. Novartis Pharms. Corp.*, No. 15-cv-12732, 2017 WL 2837002 at *11 n.5 (D. Mass June 30, 2017). ("[B]ecause documents in the patent's prosecution history are public records, the Court may take judicial notice of their contents."; Sound View Innovations, LLC v. Facebook, Inc., 204 F. Supp. 3d 655, 658 (D. Del. 2016) ("A Court may also take judicial notice of the prosecution histories, which are 'public records.'").

*Health Sci. Inc., v. Bio-Engineered Supplements & Nutrition, Inc.*, No. 9:07-CV-46, 2008 WL 2359961 (E.D. Tex. June 5, 2008).

For the Park and Williams references, DSS's merely alleges that these references were used by the Examiner to reject one similar claim during the prosecution of the '511 Patent. DSS, however, does not plead any facts alleging that the Park and Williams references were not cumulative of the prior art of record for the '674 Patent. Therefore, its inequitable conduct allegations based on Park and Williams should be stricken.

DSS's allegations based on Cuppone should be stricken for an additional reason. For Cuppone, DSS merely alleges that it "depicts a patient specific locating means" and includes figure from the reference showing "drilling guides." Dkt. 94 at ¶138. DSS, however, does not include any allegations that would explain how an examiner would have used this information to assess the patentability of the claims, rendering its allegations insufficient. *Corning Inc. v. Wilson Wolf Manufacturing Corp.,* 569 F.Supp.3d 920, 929-930 (D. Minn. 2021) (Inequitable conduct allegations that do not "put forth sufficient grounds for how the information rendered the invention unpatentable if the alleged data had been disclosed to the Examiner" are insufficient).

### 3. DSS's Vague and Conclusory Allegations Are Insufficient to Plead Specific Intent to Deceive the PTO During the Prosecution of the '674 Patent

DSS was also required to plead facts from which this Court may reasonably infer that a *specific individual* withheld the references at issue with *specific intent* to deceive the PTO during the prosecution of the '674 Patent. As noted above, many of DSS's allegations generally refer to a group of individuals (the "Applicants"), making it difficult or impossible to determine what specific individual or individuals DSS is actually accusing of inequitable conduct. Accordingly, its allegations against "the Applicants" are deficient and should be stricken. For its remaining allegations that do refer to the prosecuting attorney Jeffrey Haendler ("Attorney

Haendler") or inventor Bahaa Seedhom ("Dr. Seedhom"), DSS's allegations fail to meet the
scienter requirement of inequitable conduct.

In order "[t]o meet the threshold level of deceptive intent required to sufficiently plead
inequitable conduct, the pleading must 'contain specific factual allegations' showing that a
specific individual with knowledge of the material information 'decided to deliberately withhold
it from the relevant examiner.'" *Invista N. Am. S.a.r.l. v. M&G USA Corp.*, No. 11-1007-SLR-
CJB, 2013 WL 12304544, at *11 (quoting *Exergen*, 575 F.3d at 1331). Thus, DSS must allege
specific facts that would show that Attorney Haendler or Dr. Seedhom both knew that the
allegedly withheld references were material, and made a *deliberate decision* to not disclose them
with the *intent to deceive* the PTO. DSS's allegations do not even come close to meeting this
stringent standard.

As an initial matter, DSS's allegations are insufficient to demonstrate that a specific
individual had both knowledge of Cuppone and Berry ***and*** knowledge of their materiality. For
Attorney Haendler, DSS has not even adequately alleged that Attorney Haendler even knew
about the Cuppone and Berry references. DSS's merely alleges that "on information and belief,
Attorney Haendler given his extensive involvement in the prosecution of this family of patents,
knew of the references and knew that they constituted prior art." Dkt. 94 at ¶140. Such
allegations are insufficient to successfully plead that Attorney Haendler knew of the references
or their materiality. *Analog Devices*, 2021 WL 466859 at *3 (inequitable conduct allegation on
information and belief that patentee withheld his own reference was insufficient survive a motion
to strike); *Easton Tech. Prod., Inc. v. FeraDyne Outdoors, LLC*, No. CV 18-1222-RGA, 2019
WL 1513463, at *5-6 (D. Del. Apr. 8, 2019) (Defendant's allegations of inequitable conduct on
information and belief that Palomaki, as inventor and Vice President of Product Development,

10

knew of the prior art, was insufficient.); *Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 16-CV-3529, 2016 WL 5871501, at *4 (N.D. Ill. Oct. 7, 2016) ("Information and belief, however, is insufficient to plead allegations of inequitable conduct unless the allegations set forth the specific facts on which the belief is based.").

Similarly, while Dr. Seedhom is a named author on the Cuppone and Berry references, DSS has not alleged any facts that would establish that he would have known that the references were material to the prosecution of the '674 Patent.  *See*, *Analog Devices*, 2021 WL 466859 at *3 (striking affirmative defense where defendant's pleading alleged that the inventor, as one of the reference's authors, would recognize its materiality.).

DSS's allegations of specific intent also fail because it incorrectly conflates materiality and intent.  DSS alleges that "at least inventor Seedhom and Attorney Haendler knew that the disclosure of locating members in the prior art was material" and "allowed the claims to issue without disclosing Cuppone et al. or Berry et al" and then states in conclusory fashion that this "further confirms that the omission was not inadvertent but rather done with intent to conceal from the examiner information about the topic the Applicants had used to distinguish the art cited by the Examiner."  Dkt. 94 at ¶142.  Intent, however, cannot be inferred from materiality and instead must be established as a separate element of inequitable conduct.  *Zvelo, Inc. v. SonicWall, Inc*., No. 06–cv–00445–PAB–KLM, 2013 WL 5443858, at *5 (D. Colo. Sept. 30, 2013) ("[I]ntent to deceive the PTO may not be inferred solely from some level of knowledge of a prior art reference.").  DSS's specific intent allegations for these references is exactly the type of flimsy inequitable conduct defense that the Federal Circuit has prohibited, and they should be stricken.

11

With respect to Park and Williams, DSS alleges that the references were material, that the then pending claims of the '674 Patent and '511 Patent are similar, that Attorney Haendler was involved in both prosecutions, and that the "close proximity in time of the events" means that "the most reasonable inference is that this information was withheld with the intent to deceive the PTO and obtain issuance of the '674 Patent."  Dkt. 94 at ¶135.  Not so.

First of all, DSS fails to make any allegations that Dr. Seedhom was aware of these references or made any deliberate decision to withhold them with specific intent to deceive the PTO.  Thus, any allegation that Dr. Seedhom committed inequitable conduct by an alleged failure to disclose these references necessarily must fail.

As for Attorney Haendler, there are numerous reasons why he may not have disclosed the Office Action or Park and Williams:  he may have thought they were cumulative of art already in front of the examiner of the '674 Patent; he may have believed the art, or similar art, was already considered by the Examiner of the '674 Patent; or he may have simply forgotten.  *See*, *Therasense*, 649 F.3d at 1290 ("Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive."); *Ocado Innovation Ltd. v. AutoStore AS*, No. 1:21-cv-0004-JL, 2021 WL 6197076, at *5 (D.N.H. Dec. 30, 2021) (where three individuals knew of a reference, the pleaded facts were insufficient to "infer that these individuals withheld the information with the specific intent to deceive the patent office.").

Even if Attorney Haendler made a mistake, even a grossly negligent one, in forgetting to disclose to the Examiner the Office Action, Park, and Williams in the brief seven-day window between the response to the non-final rejection for the '825 application and paying the issue fee for the '674 Patent, the Federal Circuit has squarely held that that is not enough for inequitable

conduct. *Therasense*, 649 F.3d at 1290–91, 1295–96.  DSS must establish that the "single most" reasonable inference is that the references were deliberately withheld with an intent to deceive. *Id*. at 1290–91.  DSS allegations, which allow for competing, equally plausible reasons why Attorney Haendler did not disclose these specific references to the Examiner during prosecution of the '674 Patent thus present precisely the attempt to use inequitable conduct as "a mere litigation tactic in garden-variety cases" that this Court has rejected.  *PetEdge*, 2017 WL 1702276, at *3.

### 4.      DSS's Allegations of Inequitable Conduct for the '511 Patent Should Also be Stricken

DSS's allegations of inequitable conduct with respect to the '511 Patent are based on a theory of alleged non-disclosure of the Cuppone and Berry references.  Dkt. 94 at 144-146. These allegations mirror those made with respect to the Cuppone and Berry references relied upon by DSS for the '674 Patent.  *Compare,* Dkt. 94 ¶¶141 *with* ¶¶145.  As explained above, DSS's allegations of inequitable conduct for the '674 Patent based on the Cuppone and Berry references are insufficiently plead.  For the same reasons, DSS's allegations of inequitable conduct as to the '511 Patent should also be stricken.

### 5.      DSS's Inequitable Conduct Defenses for the '511, '265 and '266 Should Be Stricken as DSS Has Failed to Allege an Immediate and Necessary Relation Between Inequitable Conduct and the Enforcement of These Patents

DSS alleges that the '511 Patent is unenforceable due to the alleged inequitable conduct during prosecution of the '674 Patent.  DSS also alleges that the '265 and '266 Patents are rendered unenforceable by the alleged inequitable conduct during the prosecution of the '674 and '511 Patents under the doctrine of infectious unenforceability.  As explained above, however,

DSS has failed to properly allege inequitable conduct with respect to either the '674 or '511 Patents and DSS's defense as to the '511, '265 and '266 Patents should be stricken.

In the event that this Court finds that DSS properly alleged inequitable conduct with respect to the '674 and/or '511 Patents, DSS still failed to plead facts sufficient to maintain an affirmative defense of inequitable conduct based on infectious unenforceability.  In order to adequately plead infectious unenforceability, DSS must demonstrate inequitable conduct of a patent-in-suit that has "an 'immediate and necessary relation' to the enforcement of the other patents-in-suit." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CIV. 08-309-JJF-LPS, 2009 WL 4928024, at *9 (D. Del. Dec. 18, 2009) (citation omitted), *report and recommendation adopted*, 2010 WL 2990039.  An immediate and necessary relations requires that the inequitable conduct that occurred earlier in the chain of issued patents must be related to the targeted claims of the patents sought to be enforced.  *eSpeed, Inc. v. Brokertec USA, L.L.C.*, 417 F.Supp.2d 580, 595 (D. Del. 2006), *aff'd,* 480 F.3d 1129 (Fed. Cir. 2007).

The court in *Power Integrations* dealt with infectious unenforceability allegations that are similar to those at issue here.  There, the defendant alleged infectious unenforceability based on two patents having related specifications, substantively identical claim limitations, and the fact that the patents had been asserted against the same accused products.  *Id.* at *6.  The court found these allegations were insufficient "to establish the required 'immediate and necessary' relation" and properly struck the defense.  *Id.* at *9.  Here, DSS allegations of infectious unenforceability do nothing more than establish a relationship among the relevant patents.  DSS alleges that the '511 Patent is a continuation of the '674 Patent (with some similar claim elements, specifications, figures, and priority date), shares the same title and abstract with the '674 Patent, and that the Applicants terminally disclaimed the '511 Patent's term over the '675 Patent.  Dkt.

14

94 at ¶146.  Similarly, DSS alleges that the '265 and '266 Patents each share similar claim limitations, specifications, figures, and priority dates with the '674 and '511 Patents.  *Id.* at ¶¶147-152.  These allegations are similar to those in *Power Integrations* and should also be dismissed.  If anything, all DSS has done is simply alleged facts consistent with patents that share a parent-child relationship.  *See*, *Glob. Tech Led, LLC v. Hilumz Int'l Corp.*, No. 2:15-CV-553-FTM-29CM, 2017 WL 588669, at *11 (M.D. Fla. Feb. 14, 2017) ("Defendants [] improperly rest their theory of "infectious unenforceability" on nothing more than the parent-child relationship between the [patents].).  Because DSS has failed to adequately plead facts establishing infectious unenforceability, its defenses against the '511, '265 and '266 Patents should be stricken.

## III.    CONCLUSION

For the reasons set forth above, Defendant's Third Affirmative Defense of inequitable conduct and unclean hands should be stricken in its entirety.

Respectfully submitted,

Dated: February 1, 2023

/s/ Christie Larochelle
Christie Larochelle (BBO# 705561)
clarochelle@goodwinlaw.com
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: (617) 570-1683
Fax: (617) 321-4382

Neel Chatterjee (*pro hac vice*)
NChatterjee@goodwinlaw.com
Michael C. Ting (*pro hac vice*)
MTing@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, California 94063

650.752.3100 Telephone
650.853.1038 Facsimile


Natasha E. Daughtrey (*pro hac vice*)
NDaughtrey@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 South Figueroa Street
41st Floor
Los Angeles, California 90017
213.426.2500 Telephone
213.623.1673 Facsimile

*Counsel for Plaintiff Xiros, Ltd.*

**CERTIFICATE OF SERVICE**

I, Michael C. Ting, certify that on this 1st day of February, 2023, this document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).


*/s/ Christie Larochelle*
Christie Larochelle